UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| STRATCOMMS LLC, | Case No. 2:22-cv-01093-MMD-EJY |
| --- | --- |
| Plaintiff, | ORDER |
| v. | |
| REPUBLIC OF MALI, | |
| Defendant. | |

**I.   SUMMARY**

Plaintiff Stratcomms LLC alleges that Defendant Republic of Mali breached a contract to pay Plaintiff in full for its consulting services and that Defendant has been unjustly enriched by Plaintiff's services. (ECF No. 1 ("Complaint").) Before the Court is Plaintiff's motion for default judgment. (ECF No. 26 ("Motion").) As explained below, the Court will grant the Motion as to Plaintiff's breach of contract claim and deny the Motion as to Plaintiff's unjust enrichment claim.

**II.   DISCUSSION**

The Court first addresses whether Plaintiff has met the procedural requirements for default judgment and whether the Court has jurisdiction over Plaintiff's claims under the Foreign Sovereign Immunities Act ("FSIA"). The Court then addresses whether Plaintiff has satisfied the factors for obtaining default judgment articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), and met the standard for obtaining default judgment against a foreign state under 28 U.S.C. § 1608(e).

**A.   Procedural Requirements**

Plaintiff has satisfied the procedural requirements for default judgment under Fed. R. Civ. P. 55(b). The Clerk of Court properly entered a default against Defendant under

Fed. R. Civ. P. 55(a) because Defendant has failed to appear after having been properly served. (ECF No. 25.)

### B. Jurisdiction

"The FSIA is the sole basis of subject matter jurisdiction over suits involving foreign states and their agencies and instrumentalities." *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 304 (9th Cir. 1997) (citation omitted). "Under the FSIA, foreign states are immune from suit unless one of the enumerated exceptions to the Act applies." *Id.* (citing 28 U.S.C. §§ 1330, 1604-05). Under 28 U.S.C. § 1605(a)(2), "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." Plaintiff asserts that Defendant is not entitled to immunity under § 1605(a)(2) because "this action involves 'commercial activity carried on in the United States by the foreign state' – specifically, [D]efendant's contracting for [P]laintiff, a U.S. entity, to perform services in the United States for [D]efendant's economic benefit." (ECF No. 1 at 2.) The Court agrees.

Under § 1603(d), "[a] 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act," and "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Under § 1603(e), "[a] 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States." "Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor." *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002). "Thus, an activity is commercial unless it is one that only a sovereign state could perform." *Id.* The Ninth Circuit in *Park* noted examples of "a contract to purchase military supplies" and "[a] government's issuance of bonds in order to refinance government debt" as commercial in nature and subject to the "commercial activity exception." *See id.*

Here, Defendant entered into a contract in December 2018 with Plaintiff—a U.S.-based LLC—for Plaintiff's "consulting services for improving and strengthening relations between the Republic of Mali and the United States of America in the areas of politics, economics, and strategy" for the calendar year of 2019 in exchange for payment of 708 million CFA francs (the "Contract"). (ECF No. 1 at 3-4; ECF No. 26-1 at 3-4.) Such contracting could be performed by a private actor and considered "commercial activity carried on in the United States" by Defendant that has "substantial contact with the United States." The Court therefore finds that the "commercial activity" exception to foreign sovereign immunity applies, and it has jurisdiction here.

### C.     *Eitel* Factors and 28 U.S.C. § 1608(e)

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has identified the following factors as relevant to the exercise of a court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

"[D]efault judgments against foreign nations are generally disfavored." *Doe v. Qi*, 349 F. Supp. 2d 1258, 1273 (N.D. Cal. 2004) (citing Restatement (Third) of Foreign Relations Law § 459 cmt c (1987)). "Courts have gone to considerable lengths to allow default judgments against foreign states to be set aside." *Id.* (collecting cases). Under 28 U.S.C. § 1608(e), "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

The Court analyzes the *Eitel* factors in tandem with the 28 U.S.C. § 1608(e) standard below.

### 1. First, Fifth, Sixth, and Seventh *Eitel* Factors

"In cases . . . in which the defendant has not participated in the litigation, the first, fifth, sixth, and seventh *Eitel* factors are easily satisfied." *Hygenix, LLC v. Xie*, Case No. 2:21-cv-00957-JAD-EJY, 2022 WL 1094181, at *1 (D. Nev. Apr. 11, 2022). Such is the case here. The first factor—the possibility of prejudice to the plaintiff—weighs in favor of granting default judgment because, if Plaintiff's Motion is not granted, Plaintiff would likely be without other recourse for recovery and would suffer significant prejudice. The fifth and sixth factors—the possibility of a dispute concerning material facts and whether the default was due to the excusable neglect—also weigh in favor of default judgment. Due to Defendant's failure to participate, there is no dispute over material facts and no indication that the default is due to excusable neglect. Lastly, while the seventh factor—the strong policy favoring decisions on the merits—"arguably always weighs against the entry of default judgment because cases should be decided on their merits whenever reasonably possible," "when defendants fail to answer the complaint, a decision on the merits is impractical, if not impossible." *See Hygenix*, 2022 WL 1094181, at *1 (citations and internal quotations omitted). The seventh factor thus will not preclude the Court from entering default judgment.

### 2. Second and Third *Eitel* Factors

The second and third factors consider the merits of the plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *See Hygenix*, 2022 WL 1094181, at *2 (citation omitted). Generally, "upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267

(9th Cir. 1992). The Court addresses in turn the merits and sufficiency of Plaintiff's breach of contract and unjust enrichment claims.

### a. Breach of Contract

Under Nevada law, "[t]o succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)). Plaintiff alleges and supports with evidence that it entered into a valid contract with Defendant for Plaintiff's consulting services in exchange for payment—the Contract, that Plaintiff performed its obligations under the Contract, and that Defendant breached the Contract by failing to pay half of the agreed-upon payment, resulting in damages. (ECF No. 1 at 4-8; ECF No. 26-6 at 3-6; ECF Nos. 26-1, 26-2, 26-3, 26-5.) The Court therefore finds that Plaintiff has sufficiently stated a breach of contract claim and demonstrated its merits. The second and third *Eitel* factors thus weigh in favor of default judgment as to the breach of contract claim.

### b. Unjust Enrichment

Unjust enrichment is based on the doctrine of quasi-contract, and "[t]he essential elements of quasi[-]contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (citations omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

As to unjust enrichment, Plaintiff alleges in the Complaint that "Defendant received substantial benefits from Plaintiff's services," "Plaintiff performed such services at Defendant's request and in reliance on promises that Defendant would pay for them," and as a result of Plaintiff's services in 2019, "Defendant received $93 million more in aid from the United States than it had before." (ECF No. 1 at 8-9.) Plaintiff alleges that "[f]or refusing to recognize its obligations under the Contract . . . Defendant should have to disgorge to Plaintiff the benefits that Plaintiff's services conferred." (*Id.*)

Plaintiff's unjust enrichment claim is plainly based on the Contract—an express, written contract—and thus fails as a matter of law. *See Leasepartners*, 942 P.2d at 187. Plaintiff appears to have also pled the unjust enrichment claim in the alternative to the breach of contract claim "if and to the extent the Court finds the Contract unenforceable in whole or in part." (ECF No. 1 at 8.) Because the Court finds that Plaintiff has established its breach of contract claim, it cannot find as viable Plaintiff's alternative unjust enrichment claim based on the same factual allegations of services provided in 2019.

To the extent Plaintiff now argues in its Motion that its unjust enrichment claim is based on the value of its work—allegedly $10 million a year—for obtaining continued U.S. aid at the 2019 levels for each of the subsequent three years (ECF No. 26 at 3, 15-16), the Court is not persuaded that default judgment is warranted. First, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff is essentially asking for default judgment on its unjust enrichment claim based on alleged quasi-contracts formed and benefits conferred after 2019 that were not pled in its Complaint. The Complaint does not even mention what Plaintiff now claims in its Motion—that the then Mali prime minister purportedly valued Plaintiff's work of obtaining increased U.S. aid for Mali at $10 million a year and that Mali continued to receive U.S. aid at the 2019 levels in subsequent years (ECF No. 26 at 15-16). Plaintiff cannot now request a default judgment that differs from what is demanded in the pleadings.

Moreover, in any event, this is the type of scenario where default judgment against a foreign state is particularly disfavored. Plaintiff argues that it would be unjust to allow Mali to retain the additional $93 million in U.S. aid for each of the last four years it received as a result of Plaintiff's services because, after having undergone two military coups, Mali has purportedly used such funding "contrary to the purpose for which the U.S. government had provided it and, as such, against American interest." (ECF No. 26 at 7, 16.) Even assuming Plaintiff's services could be fairly traced to the continued increased levels of funding, such matters ultimately concern foreign policy interests and appropriation decisions that implicate the executive and legislative branches of the U.S. government. The U.S. government presumably could have reduced its funding to Mali after the alleged installation of a "Moscow-backed military dictatorship that threatens . . . the interests of the United States" if it had chosen to do so. (ECF No. 26 at 3.) Even assuming Plaintiff could establish an unjust enrichment claim based on such allegations, the Court declines to interfere with those executive and legislative matters.

The Court therefore finds that Plaintiff has failed to establish an unjust enrichment claim, and the second and third *Eitel* factors weigh against default judgment as to this claim.

### 3. Fourth *Eitel* Factor

The fourth *Eitel* factor concerns the sum of money at stake in the action. 782 F.2d at 1471. "[T]he Court considers the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, Case No. 2:14-cv-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016) (citations and internal quotations omitted). The Court addresses the damages requested for each of Plaintiff's claims in turn.

### a.  Breach of Contract

For the breach of contract claim, Plaintiff seeks to recover "the remaining half of the consideration due under the Contract, which amounts to $588,675.48 at current exchange rates." (ECF No. 26 at 14; ECF No. 1 at 9.) "The fundamental principle that underlies the availability of contract damages is that of compensation." 24 Williston on Contracts § 64:1 (4th ed. 2023). The goal is to place the plaintiff "in as good a position as [they] would have occupied had the defendant-promisor not breached the contract," so the plaintiff is "generally entitled to an award of money damages in an amount reasonably calculated to make [them] whole and neither more nor less." *Id.* Because Plaintiff's requested breach-of-contract damages are reasonable and proportionate to the harm suffered, this factor weighs in favor of default judgment in that amount.

Plaintiff also requests, in cursory fashion, prejudgment interest on the breach-of-contract damages calculated from January 1, 2020. (ECF No. 26 at 3, 16.) However, Plaintiff has provided no argument to demonstrate that it is entitled to interest on those damages, so the Court denies the request for interest.

### b.  Unjust Enrichment

Plaintiff requests $30 million in damages for its unjust enrichment claim—$10 million for each of at least three years of Defendant's "misused gains" of an increase in $93 million a year of U.S. government funding. (*Id.* at 3, 17.) That "the amount of damages sought are significant" itself weighs against default judgment on this claim. *See Lasheen v. Loomis Co.*, Case No. 2:01-cv-0227-LKK-EFB, 2013 WL 1178209, at *8 (E.D. Cal. Mar. 21, 2013), *report and recommendation adopted*, Case No. 2:01-cv-0227-LKK-EFB, 2013 WL 5375815 (E.D. Cal. Sept. 24, 2013), *aff'd sub nom. Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338 (9th Cir. 2015), *and amended*, Case No. 2:01-cv-00227-KJM-EFB, 2016 WL 4161119 (E.D. Cal. Aug. 4, 2016). In addition, the Court finds that the requested amount of damages is completely disproportionate and inappropriate given that Plaintiff's unjust enrichment claim is legally insufficient for the reasons discussed above and where Plaintiff will already be compensated in breach-of-contract

damages. Even assuming Plaintiff could establish its unjust enrichment claim, such damages are likely too speculative or attenuated based on the limited evidence Plaintiff proffered, and the awarding of such damages would unduly interfere with the conduct of the executive and legislative branches for the reasons discussed above. The fourth *Eitel* factor therefore weighs against default judgment on the unjust enrichment claim.

Taken together, the *Eitel* factors weigh in favor of granting default judgment on the breach of contract claim, and the Court finds that Plaintiff has "establishe[d] [its] claim or right to relief by evidence satisfactory to the court" to warrant default judgment against Defendant on the breach of contract claim for $588,675.48 in damages. *See* 28 U.S.C. § 1608(e). The Court will therefore grant default judgment on the breach of contract claim in that amount.

On the other hand, the most important *Eitel* factors and the *Eitel* factors as a whole weigh against granting default judgment on the unjust enrichment claim, and the Court finds that Plaintiff has failed to establish its claim or right to relief for unjust enrichment under 28 U.S.C. § 1608(e). The Court will therefore deny default judgment on the unjust enrichment claim.

### III. CONCLUSION

The Court notes that Plaintiff made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiff Stratcomms LLC's motion for default judgment (ECF No. 26) is granted in part and denied in part. It is granted as to the breach of contract claim and denied as to the unjust enrichment claim.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant for $588,675.48 on the breach of contract claim.

The Clerk of Court is further directed to enter judgment in favor of Defendant and against Plaintiff on the unjust enrichment claim.

The Clerk of Court is further directed to close this case.

DATED THIS 18th Day of April 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE